Hozeah C. **HUBBARD**

v.

**JOHN TYLER COMMUNITY COLLEGE.**

Civ. A. No. 77–0742–R.

United States District Court, E. D. Virginia, Richmond Division.

June 28, 1978.

754

Sa'ad El-Amin, Richmond, Va., for plaintiff.

Paul J. Forch, Asst. Atty. Gen., Richmond, Va., for defendant.

## MEMORANDUM

WARRINER, District Judge.

This matter is before the Court on defendants' motion of 8 May 1978 for summary judgment. As the plaintiff's responsive brief and the defendants' rebuttal brief have both been filed, the matter is now ripe for disposition.

Plaintiff in this case was enrolled in the Nursing Program at John Tyler Community College, a State educational institution in the fall quarter term of 1976. The Nursing Program consists of academic courses and clinical training which together comprise the total evaluative basis for promotion and graduation. During the fall quarter of 1976, plaintiff was advised that she had received a grade of "D" on a written examination in the course of Nursing 222. In the spring quarter of 1977 plaintiff received a grade of "F" in the course of Nursing 224. Pursuant to the written policy of the college, a student must obtain at least a grade of "C" for every required nursing course. Both Nursing 222 and Nursing 224 are required courses. The failure of the nursing student to satisfy this standard will result in her required withdrawal from the nursing course sequence in which she is currently enrolled unless readmission is approved both by the head of the nursing program and the nursing faculty. Acting pursuant to this general college policy and the practice of the institution, the plaintiff was not permitted to graduate on 3 June 1977[1] because of academic deficiencies in Nursing 222 and Nursing 224.

The plaintiff now brings this action pursuant to 42 U.S.C. § 1983 alleging that the defendants' action in denying plaintiff the right to graduate with an associate degree in nursing violated her constitutional rights to substantive and procedural due process.

I

▮ Plaintiff's procedural due process argument must fail in light of *Board of Curators, Univ. of Mo. v. Horowitz,* 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978). In *Horowitz,* the respondent, a student at the University of Missouri-Kansas City Medical School, had been dismissed by the officials

1. Plaintiff sought at that time a temporary restraining order to permit graduation with her class. The application was denied. *Hubbard v. John Tyler Comm. Coll.,* No. 77–0303 (E.D.Va. June 3, 1977).

of the school during her final year of study for failure to meet academic standards. She sued the school officials under 42 U.S.C. § 1983 in U.S. District Court alleging, amongst other constitutional violations, that the officials had not accorded her procedural due process prior to her dismissal. The District Court, after conducting a full trial, concluded that respondent had been afforded all of the rights guaranteed her by the Fourteenth Amendment to the United States Constitution and dismissed her complaint. The Court of Appeals for the Eighth Circuit reversed. The Supreme Court granted certiorari to consider what procedures must be accorded to a student at a State educational institution whose dismissal may constitute a deprivation of "liberty" or "property" within the meaning of the Fourteenth Amendment.

In reversing the judgment of the Court of Appeals, the Supreme Court compared those situations where a student is suspended from school due to disciplinary reasons with those situations where, as in *Horowitz* and the instant case, the student is being dismissed for academic failure. The Supreme Court held that the procedural due process protection of the Constitution in the latter situation is not violated by the failure of the school officials to give the student a hearing prior to dismissal:

> The decision to dismiss respondent rested on the academic judgment of school officials that she did not have the necessary clinical ability to perform adequately as a medical doctor and was making insufficient progress toward that goal. Such a judgment is by its nature more subjective and evaluative than the typical factual questions presented in the average disciplinary decision. Like the decision of an individual professor as to the proper grade for a student in his course, the determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decisionmaking.
>
> Under such circumstances, we decline to ignore the historic judgment of educators and thereby formalize the academic dismissal process by requiring a hearing.

. . . . .

We recognize, as did the Massachusetts Supreme Judicial Court over 60 years ago, that a hearing may be 'useless or even harmful in finding out the truth as to scholarship.' [98 S.Ct. at 955].

In the instant case, the plaintiff was aware of her failure in the two nursing courses. She continuously discussed the grades with her instructors and was advised of the reasons for them. She was afforded an opportunity to retake the Nursing 222 exam, which she did, whereupon her final grade remained a "D" due to a low grade on the exam. Although the plaintiff could have taken the course over, she failed to do so. Additionally, plaintiff failed successfully to complete the clinical course of Nursing 224.

The Court holds that the procedural due process argument is wholly answered by *Horowitz* in that the undisputed facts show that the process given plaintiff substantially exceeded whatever constitutional requirement there may be.

## II

*Horowitz* also speaks to plaintiff's substantive due process argument:

> [A] number of lower courts have implied in dictum that academic dismissals from state institutions can be enjoined if "shown to be clearly arbitrary or capricious." Even assuming that the courts can review under such a standard an academic decision of a public educational institution, we agree with the District Court that no showing of arbitrariness or capriciousness has been made in this case. Courts are particularly ill-equipped to evaluate academic performance.

The Supreme Court, thus, did not directly pass on the validity of implications from lower court "dictum" on substantive due process. And this Court, recognizing that courts are indeed "ill equipped to evaluate academic performance," specifically re-

frains from an evaluation of the various disputes between the plaintiff and her instructors. It may be that the student was right and her teachers were wrong as to the proper procedures to be followed in administering medications, for instance. The Court simply will not make a judgment in this area on the theory flowing from the above-quoted portions of *Horowitz* that whatever right there may be under a claim of substantive due process such right does not involve a review of academic decisions.[2]

Accepting, then, that the grades given to plaintiff and their bases are not the subject of judicial scrutiny, the Court does note that the consequences to plaintiff attendant upon the grades awarded are not a result of arbitrariness or capriciousness. The record is clear. Plaintiff earned a final grade of "D" in Nursing 222. This grade was mathematically computed upon plaintiff's previous grades and over four interim tests, a paper, and a final exam. In order to earn a grade of "C" in Nursing 222, the plaintiff needed a minimum grade of "A" on her final exam. She received a grade of "D." Subsequently she was given a re-examination whereupon she again received a grade of "D." Additionally, plaintiff received a grade of "F" in Nursing 224, a clinical course, despite several additional opportunities to demonstrate clinical proficiency.

In light of the defendant school's written policy which requires a minimum grade of "C" for every required nursing course, the Court believes and so holds that defendants' actions were clearly proper. The defendant school is only asking of plaintiff what it asks of all nursing students. It is only preventing her from graduating until she successfully passes her courses. It would be indeed strange to hold that such a commendable requirement violates the United States Constitution.

An appropriate order shall issue.

---

2. Though contained in that portion of *Horowitz* specifically discussing procedural due process, the Supreme Court noted that, " . . . the decision of an individual professor as to the proper grade for a student in his course . . . requires an expert evaluation of cumulative information and is not readily adaptable to the procedural tools of judicial . . . decision-making." *Horowitz, supra,* at 955.