Ilona K. BUKO, Plaintiff,

v.

AMERICAN MEDICAL LABORATORIES, INC., Defendant.

Civ. A. No. 93–127–A.

United States District Court, E.D. Virginia, Alexandria Division.

June 29, 1993.

Patricia A. Smith, Alexandria, VA, for plaintiff.

Christine Hope Perdue, Hunton & Williams, Fairfax, VA, for defendant.

## MEMORANDUM OPINION

HILTON, District Judge.

This matter came before the court on defendant's motion for summary judgment. Plaintiff Ilona K. Buko filed this action on February 2, 1993, against Defendant American Medical Laboratories, Inc., (AML) alleging in Count I violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623, *et seq.*, as amended; Count II, discrimination in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and Count III, discrimination in violation of the Employment Retirement Income Security Act, 29 U.S.C. § 1132. For the reasons stated below, this court finds that there are no material facts in dispute and this matter is ripe for disposition as to all three claims.

Plaintiff, who is 62 years old, was hired by AML in 1973. At the age of 49 she was promoted to the position of Bench Supervisor of Group B of the company's radioimmunoassay ("RIA") department, where she supervised the work of six other employees. Her supervisor since 1982 was the Technical Director of the RIA department, Mr. John Praither.

The RIA department at AML performs tests on human blood specimens. Many of the tests are performed by setting up test

tubes and then hand pipetting the blood samples and various reagents into tubes in separate stages. The hand pipette is held in the hand and its contents are dispensed into tubes by thumb action, as often as 1,000 times per day. AML has some machines which automate the process, but none of the tests are wholly automated. As a Bench Supervisor, Ms. Buko allegedly spent up to fifty percent of her time performing "hands-on" tests.

In July of 1991, after a period of probation and following complaints from co-workers, Ms. Buko was removed from her supervisory position to the position of Senior Medical Technologist, a position in which she did not have supervisory responsibilities. In this position she had to perform a significant amount of "hands-on" testing. This was problematic because, in 1987, Ms. Buko was diagnosed as having severe carpometacarpal arthritis in the joints of her thumbs. Her condition interferes with actions of the hands requiring manual dexterity, such as the pipetting required in performing manual lab tests. In order to accommodate her arthritis condition, she was placed on a work team where tests were more automated than other groups, and thus where she was required to perform less manual pipetting. Ms. Buko was also assigned more administrative tasks in lieu of some manual testing. Pursuant to her request for a reasonable accommodation of her thumb condition, she was provided tricontinent bottles, which she could use to add reagent without the use of her thumbs.

She worked in the position of Senior Medical Technologist until May of 1992, at which point she took vacation leave and then took extended sick leave, allegedly to have joint replacement surgery on her thumb. Ms. Buko alleges that in April of 1992, she informed Mr. Praither that she could no longer perform her duties because of her arthritis, and that she was filing for extended sick leave and long-term disability. In early May, plaintiff completed an extended sick leave form, and based on the information relayed to him, Mr. Praither filled out a portion of the form indicating the anticipated length of absence: "Depends on the success of the surgery and doctor's opinion. 1 to 2 years." The form had two doctors notes attached, one from a Dr. Welsh and another from Dr. Bruce Butler. The letter from Dr. Bruce Butler described the results of a consultation with Ms. Buko. The end of the note allegedly stated: "Surgery: Surgery scheduled in two weeks, return date after the surgery."

Plaintiff thereafter took a week of vacation and then began to receive the extended sick leave benefits, amounting to $4,915.04, from May 14 to June 26, 1992. When AML discovered that plaintiff did not have the surgery, it contended that Dr. Butler's letter was falsified. When plaintiff could provide no plausible explanation for the allegedly falsified doctor's letter, AML terminated her employment—for falsification of documents and obtaining sick leave under false pretenses. Plaintiff alleges that AML falsified the letter to "force her out" due to her age and status as a long-term employee.

Following her termination, her responsibilities were absorbed by other medical technologists in the group, and AML did not hire another medical technologist to replace Ms. Buko. AML subsequently downgraded the position and hired a laboratory aide at a lower salary to assist the Group in performing administrative tasks, but not to perform testing, a major component of the medical technologist position. Plaintiff claims that AML used plaintiff's alleged falsification of the letter as a pretext to rid itself of a 62 year old, disabled employee who, because of her age and medical condition, was having difficulty performing the duties of her position, and that AML, a company in financial difficulty, obtained financial savings from her termination.

During the period of Ms. Buko's employment with AML, the company maintained three types of retirement plans: (1) a 401(k) plan; (2) a profit-sharing plan; and (3) an employee stock ownership plan ("ESOP"). Ms. Buko has vested accounts with AML under all three retirement plans, and she has not withdrawn her funds from these accounts. It also maintains a long-term disability ("LTD") plan for employees that are totally disabled and have exhausted extended sick leave benefits.

Contributions to the 401(k) plan are made only by the employees and are strictly voluntary, and the costs are the same for the older and younger employees. Contributions, made to the either the profit-sharing plan or the ESOP, are made based upon a formula which takes into account the employee's compensation. AML has made no contributions to the profit-sharing plan since 1985, the year in which the ESOP was put into effect. AML made no contributions to the ESOP from 1990 to 1992. None of the three plans require a defined level of funding each year.

Buko filed a charge with the Equal Employment Opportunity Commission ("EEOC") on August 19, 1992, alleging that she had been terminated because of her age. This is the only charge of discrimination filed by Buko against AML. Following an investigation, the EEOC determined that Buko's claim of age discrimination was without merit and dismissed her charge.

■ Summary judgment is appropriate in those cases where there is no genuine dispute as to material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court must draw any permissible inferences from the underlying facts in the light most favorable to the non-moving party. *See Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The standard for summary judgment is akin to that of a judgment as a matter of law, and is appropriate only where the record as a whole could not lead the finder of fact to rule in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Tuck v. Henkel Corp.,* 973 F.2d 371 (4th Cir.1992).

■ Under the ADEA, a plaintiff must prove that "but for" her employer's discriminatory intent, she would not have been fired. *Conkwright v. Westinghouse Elec. Corp.,* 933 F.2d 231, 233 (4th Cir.1991) (citing *Lovelace v. Sherwin–Williams Co.,* 681 F.2d 230, 238 (4th Cir.1982)). Plaintiff may establish proof of age discrimination by either (1) direct evidence of discrimination, or (2) by satisfy-

ing the judicially-created Title VII proof scheme explained in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See also Conkwright,* 933 F.2d at 234; *EEOC v. Clay Printing,* 955 F.2d 936, 940 (4th Cir.1992).

■ In order to establish a *prima facie* case of age discrimination under the *McDonnell Douglas* scheme, a plaintiff must prove that she was: (a) discharged; (b) performing at the level of her employer's legitimate expectations; (c) within the protected age class—over 40—at the time of her discharge; and (d) replaced by someone outside her protected age class or was otherwise discharged because of her age. *Conkwright,* 933 F.2d at 234. If the plaintiff establishes a *prima facie* case, then the defendant must articulate a legitimate, non-discriminatory reason for the discharge. Summary judgment in favor of the defendant is appropriate if at any point the plaintiff fails to meet its burden of proof.

■ Since the Ms. Buko has not shown any direct evidence of age discrimination, she must rely on the *McDonnell Douglas* scheme. As a preliminary matter, Ms. Buko cannot establish a prima facie case of age discrimination because she cannot satisfy its fourth element—she was not replaced by a younger individual in her same position. After her discharge, no Medical Technologist or Senior Medical Technologist was hired to replace her. *See English v. Pabst Brewing Co.,* 828 F.2d 1047, 1051 (4th Cir.1987), *cert. denied,* 486 U.S. 1044, 108 S.Ct. 2037, 100 L.Ed.2d 621 (1988).

■ Even if she could establish a prima facie case of age discrimination, AML has articulated a legitimate, non-discriminatory reason of discharging the plaintiff: the good faith belief of its management that Ms. Buko falsified a physician's letter and thereby received sick leave benefits under false pretenses. *See Jefferies v. Harris Cty. Community Action Ass'n,* 615 F.2d 1025, 1036 (5th Cir.1980) (a termination based on a good faith belief that an employee violated company policy is not discrimination within the meaning of Title VII); *Moore v. Eli Lilly*

*Co.,* 990 F.2d 812 (5th Cir.1993) ("The fact that the employer's reasonable belief eventually proves to be incorrect ... would not change the conclusion that the firing had been non-discriminatory.").

■ Once the employer has offered a legitimate reason for discharge, the plaintiff's failure to produce sufficiently probative evidence of pretext entitles the defendant to summary judgment. *Young v. General Foods Corp.,* 840 F.2d 825, 829 (11th Cir. 1988), *cert. denied,* 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989); *see also Goldberg v. B. Green and Co.,* 836 F.2d 845, 848 (4th Cir.1988). " 'There must be some proof that age motivated the employer's action, otherwise the law has been converted from one preventing discrimination because of age to one ensuring dismissals only for just cause' to all people over 40." *Bienkowski v. American Airlines, Inc.,* 851 F.2d 1503, 1508 n. 6 (5th Cir.1988) (citing *White v. Vathally,* 732 F.2d 1037 (1st Cir.), *cert. denied,* 469 U.S. 933, 105 S.Ct. 331, 83 L.Ed.2d 267 (1984)).

■ Ms. Buko has been unable to proffer substantiation other than conclusory allegations that she was terminated because of her age. She alleged that someone at AML falsified her doctor's letter, because of her age, and because she was an employee of AML for 18 years. However, she has offered no facts to contradict the testimony of either John Praither, the Technical Director of the RIA Department, or Leslie Marshall, AML's Benefits Specialist, that she told them that basis of her application for sick leave was her intention to have surgery on her thumb. Ms. Buko also asserted that employees in the RIA department made comments regarding her age but she cannot attribute these comments to any specific employee, or to the necessary fact that those making comments were the decision-makers with respect to Ms. Buko. Plaintiff also clearly cannot establish the existence of discrete facts that show some nexus between the employment actions taken by the employer and the employee's age. *Eli Lilly,* 990 F.2d 819.

■ Further, Ms. Buko may not now claim that her earlier demotion from a supervisor to Senior Medical Technologist was prompted by age discrimination, for not only does no such allegation appear in her complaint, but she also failed to satisfy the ADEA's requirement that she file a timely charge of discrimination with the EEOC as a prerequisite to bringing suit. *See* 29 U.S.C. § 626(d); *Hamilton v. 1st Source Bank,* 928 F.2d 86 (4th Cir.1990). For these reasons, summary judgment as to the ADEA claim, Count I, should be granted.

Plaintiff's Rehabilitation Act claim must fail as well. Section 504 of the Rehabilitation Act provides, in pertinent part, that, "No *otherwise qualified individual* in the United States ... shall, *solely by reason of his handicap,* be excluded from participation in, be denied the benefits of, or be subject to discrimination under any federal program or activity receiving federal financial assistance." 29 U.S.C. § 794(a) (emphasis added).

■ As a threshold matter, Ms. Buko must demonstrate that she is a handicapped person according to the statute. The Act defines a "handicapped individual" as any person who: "(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities,[1] (ii) has a record of such impairment, or (iii) is regarded as having such an impairment." 29 U.S.C. § 706(7)(B). This language indicates that there must be a substantial limitation on a major life activity, and that impairment must be significant. *Forrisi v. Bowen,* 794 F.2d 931, 933–34 (4th Cir.1986). Impairments that are minor and whose relative severity is widely shared do not fall within the statute's definition. *Id.* at 934. Further, in the context of employment claims, an essential factor is whether the impairment constitutes for the particular person a significant barrier to employment. *Id.* at 933. This requires that the impairment foreclose generally the type of employment involved; in contrast, an individuals inability to perform a

---

**1.** The EEOC has defined "major life activities" to include "functions, such as caring for one's self, performing manual tasks, walking, seeing, hear-ing, speaking, breathing, learning, and working." 29 C.F.R. § 1613.702(C).

*particular* job does not amount to a substantial impairment within the meaning of the statute. *Id.* at 934–35; *accord Jasany v. United States Postal Service,* 755 F.2d 1244, 1248–49 (6th Cir.1985); *E.E. Black, Ltd. v. Marshall,* 497 F.Supp. 1088, 1099–1100 (D.Hawaii 1980).

■ In this case, Buko's alleged inability to perform a *particular* job—that of a medical technologist in the RIA department who performs some testing duties requiring hand-pipetting—is the only basis for her claim of handicap. The plaintiff testified in her deposition that aside from problems with her thumbs, she was able to handle other positions, either at AML or elsewhere. She has not alleged that any of her other major life activities, except for a few household chores, were substantially limited by her arthritis in her thumbs. She is in good health, is able to drive, engage in normal activities, and her mobility is unaffected. The facts of this case are not sufficient to establish that Ms. Buko is a handicapped individual within the meaning of the Rehabilitation Act. *See Forrisi,* 794 F.2d at 934–35; *Harris v. Adams,* 873 F.2d 929 (6th Cir.1989).

■ Regardless of her status as a handicapped individual, there are two other reasons to dismiss her Rehabilitation Act claim. First, a required element of a claim for violation of the Rehabilitation Act is a showing that an employee's handicap is the *sole* reason for the employer's action. *Assa'Ad–Faltas v. Commonwealth of Virginia,* 738 F.Supp. 982, 987 (E.D.Va.1989). Ms. Buko, however, has offered no evidence to show that AML's decision to discharge her for falsification of documents and fraudulent procurement of sick leave benefits was a pretext for discrimination. Ms. Buko testified at deposition that she does not recall that anyone at AML said or did anything that led her to believe that she was discharged because of her alleged disability.

■ Second, it is clear that AML took extensive steps to accommodate Ms. Buko's condition. She was assigned to a work group whose tests were the most highly automated; she was assigned only those tests which could be automatically pipetted; and tri-con-tinent bottles were specially ordered for her to eliminate her need to hand-pipette.

Plaintiff seems to contend that AML was required to accommodate her by eliminating her testing duties altogether. Because testing is an *essential function* of both the Bench Supervisor and Medical Technologist positions, the employer is not required to eliminate the function. *See Jasany,* 755 F.2d at 1250; *see also Carter v. Tisch,* 822 F.2d 465, 467 (4th Cir.1987) (employer is not required to provide an alternative light duty assignment as an accommodation unless the employer normally provides such alternatives under its existing policies). Thus, summary judgment is appropriate as to plaintiff's Count II, the Rehabilitation Act claim.

■ Lastly, in Count III of her complaint, Ms. Buko alleges that she was discharged and discriminated against by AML to "prevent her from exercising her rights under AML's employee benefit plans, and for the purpose of interfering with the attainment of her rights" under the retirement and disability insurance plans, and to prevent plaintiff from further accrual of benefits under the retirement plans. She further alleges that due to her age and disability, she could cost AML "substantial sums of money under the disability insurance program and retirement plan."

Ms. Buko's allegations appear to fall within the scope of Section 510 of ERISA, which provides, in pertinent part:

> It shall be unlawful for any person to discharge ... a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which the participant may become entitled under [an employee benefit plan]....

29 U.S.C. § 1140 (1982). Section 510 was designed to prevent "unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights." *West v. Butler,* 621 F.2d 240, 245 (6th Cir.1980).

An essential element of the plaintiff's proof under the statute is to demonstrate that the employer was at least in part motivated by the *specific intent* to engage in activity prohibited by Section 510. *Conkwright,* 933

F.2d at 238. This requirement is a reflection of the "need to separate the firings which have an incidental, albeit important, effect on an employee's pension rights from the actionable firings, in which the effect of the firing on the employer's pension obligation was a motivating factor in the firing decision." *Id.* at 238. The plaintiff must establish facts, which if taken as true, could enable a jury to distinguish unlawful intent from other reasons why an employer might have terminated the plaintiff, and to conclude that the employer harbored the requisite unlawful intent. *Id.* at 239.

■ Plaintiff's only plausible basis to support her ERISA claim is her allegation that she was precluded, as a consequence of the termination of her employment, from placing additional funds in her ESOP and 401(k) plans. In order to sustain a Section 510 claim, however, the plaintiff must show more than an incidental loss of benefits resulting from termination, and more than the "lost opportunity" to accrue additional benefits. *See Corum v. Farm Credit Servs.*, 628 F.Supp. 707, 718 (D.Minn.1986); *Baker v. Kaiser Aluminum & Chem. Corp.*, 608 F.Supp. 1315, 1319 (N.D.Cal.1984). Ms. Buko has produced no evidence which could support a showing of any "specific intent" on the part of AML to discharge her in order to interfere with her attainment of employment benefits, and therefore the defendant's motion for summary judgment as to Count III, plaintiff's ERISA claim, is granted.

An appropriate Order shall issue.

### ORDER

This matter came before the court on Defendant American Medical Laboratories, Inc.'s, Motion for Summary Judgment. For reasons stated in the accompanying Memorandum Opinion, it is hereby

ORDERED that Defendant American Medical Laboratories, Inc.'s, Motion for Summary Judgment is GRANTED, and this case is dismissed.