Jonathan LEWIN, Plaintiff,

v.

**MEDICAL COLLEGE OF HAMPTON ROADS, etc., et al., Defendants.**

**Civil Action No. 2:95cv279.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Jan. 12, 1996.

 

College of Hampton Roads ("Medical College") and the later rejection of his application for readmission. The Defendants are the Medical College as a state institution and several members of the faculty and administrative personnel involved in Plaintiff's evaluation, dismissal, and subsequent rejection. Plaintiff alleges six causes of action. First, Plaintiff complains that the dismissal breached the contract between him and the Defendant institution. In the second and third causes of action, Plaintiff alleges that the dismissal violated his right to procedural and substantive due process as provided for by the Fourteenth Amendment of the U.S. Constitution and 42 U.S.C.A. § 1983 (West 1994). In the fourth cause of action, Plaintiff asserts a claim under 42 U.S.C.A. § 1983 (West 1994) for violation of the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C.A. § 1232g (West 1990 & Supp.1994). Fifth, Plaintiff alleges that the dismissal and rejection of his reapplication violated his rights under section 504 of the Rehabilitation Act of 1973, 29 U.S.C.A. § 794 (West Supp. 1995). Finally, Plaintiff alleges that several defendants conspired to defame and defamed him by releasing a statement that Plaintiff failed a Pharmacology examination. Much of the legal controversy surrounds the Pharmacology examination and a meeting of the Student Progress Committee ("SPC" or "Committee") which resulted in a recommendation to dismiss Plaintiff.

Defendants move this Court pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss all six causes of action. For the reasons that follow, the Court **GRANTS** Defendants' motion to dismiss the second, third, and fifth causes of action and **DENIES** Defendants' motion to dismiss the first, fourth, and sixth causes of action.

Gerald Thomas Zerkin, Gerald T. Zerkin And Associates, Richmond, VA, for plaintiff.

David Kegebein Sutelan, Mays & Valentine, Norfolk, VA, A. James Johnston, Sidney R. Steinberg, Post & Schell, Philadelphia, PA, Jonathan B. Sprague, Post & Schell, P.C., Philadelphia, PA, for defendants.

## *MEMORANDUM OPINION AND ORDER*

JACKSON, District Judge.

### INTRODUCTION

Plaintiff initiated this action following his dismissal, as a student, from the Medical

## I. LEGAL STANDARD

■ Rule 12(b)(6) provides a defense to a lawsuit where the plaintiff fails to state a claim upon which relief can be granted. When "passing on a motion to dismiss ... for failure to state a cause of action, the allegations of the complaint should be construed

favorably to the pleader." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The facts set forth in the complaint must be assumed to be true. *Johnson v. Mueller,* 415 F.2d 354, 355 (4th Cir.1969). Furthermore, "a motion to dismiss for failure to state a claim for relief should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." *Id.* (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

## II. DISCUSSION

### A. *Breach of Contract*

Defendant provides the Court with no substantive legal argument for dismissing the claim for breach of contract. Defendant merely argues that if the Court dismisses all the claims based upon federal law that it should dismiss, without prejudice, the claim of breach of contract. As explained below, the Court does not find that Plaintiff failed to state a claim upon which relief can be granted under FERPA. Thus, Defendants' motion to dismiss Plaintiff's claim for breach of contract is **DENIED.**

### B. *Due Process*

Plaintiff alleges violation of both procedural and substantive due process requirements as provided for by the Fourteenth Amendment of the U.S. Constitution and 42 U.S.C.A. § 1983 (West 1994). In essence, the alleged violation of procedural due process is that the Student Progress Committee's meeting was flawed in several aspects, including the refusal of the Medical College to allow Plaintiff's counsel to attend the meeting, the alleged refusal of the Committee to allow Plaintiff to explain fully his academic record, and the exclusion of Plaintiff from portions of the Committee's meeting. The Medical College's alleged violation of Plaintiff's substantive due process appears to stem from a right to continued enrollment at the Medical College, free from arbitrary and capricious state action. Plaintiff contends that proceedings before the Committee were tainted with malice, bad faith, and ill will. He further alleges that the responsible officials were influenced by matters not properly before them and that the Committee disregarded relevant facts when making its recommendation.

■ To be entitled to the procedural protections of the Fourteenth Amendment, Plaintiff must demonstrate that his dismissal from the Medical College deprived him of a liberty or property interest. *Board of Curators of the Univ. of Mo., et al. v. Horowitz,* 435 U.S. 78, 82, 98 S.Ct. 948, 951, 55 L.Ed.2d 124 (1976). Plaintiff alleges that the dismissal deprived him of a property interest in remaining a student at the Medical College. Plaintiff must thus demonstrate that this alleged property interest is one recognized by the law of the Commonwealth of Virginia. *Id.* Plaintiff argues that he had a contract with the Medical College, the terms of which included, *inter alia,* handbooks and manuals, and thus he had a property interest which the Due Process Clause protects.

For the purpose of disposing of the instant motion, the Court finds that Plaintiff had a protectible property interest in continued enrollment, free from arbitrary state action, at the Medical College. *Compare Regents of the Univ. of Mich. v. Ewing,* 474 U.S. 214, 221–22, 106 S.Ct. 507, 511–12, 88 L.Ed.2d 523 (1985), *Board of Curators of the Univ. of Mo. v. Horowitz,* 435 U.S. 78, 84–85, 98 S.Ct. 948, 952–53, 55 L.Ed.2d 124 (1978) *and Henson v. Honor Committee of U. Va.,* 719 F.2d 69, 73 (4th Cir.1983) (all three cases assuming protected property interest) *with Megenity v. Stenger,* 27 F.3d 1120 (6th Cir.1994) (finding that *Ewing* makes tenuous conclusion that student has substantive due process right in continuing his studies). The Court now determines whether the allegations that the Medical College did not afford Plaintiff the process he was due, *Horowitz,* 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978), and that the dismissal was arbitrary or capricious, *Ewing,* 474 U.S. 214, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985), state a claim upon which relief can be granted.

### 1. Procedural Due Process

■ In evaluating the alleged violation of procedural due process, the Court must first determine whether the dismissal was

academic or disciplinary because of "the significant difference between the failure of a student to meet academic standards and the violation by a student of valid rules of conduct. This difference calls for far less stringent procedural requirements in the case of an academic dismissal." *Horowitz*, 435 U.S. at 86, 98 S.Ct. at 953. Although cautioning that there are no universally applicable procedures, the U.S. Supreme Court concluded in *Horowitz* that a hearing is not required by the Due Process Clause of the Fourteenth Amendment "considering all relevant factors, including the evaluative nature of the inquiry and the significant and historically supported interest of the school in preserving its present framework for academic evaluations." *Horowitz*, 435 U.S. at 86 n. 3, 98 S.Ct. at 953 n. 3.

Plaintiff intimates in his Memorandum in Opposition to the Motion to Dismiss ("Memorandum in Opposition") that the introduction of information from the Honor Code proceedings makes the Committee's proceedings subject to the higher due process standards applicable to disciplinary dismissals. (Pl.'s Mem. at 22–23.) Thus the question becomes whether the introduction of this information rendered the decision a disciplinary one or one of mixed academic and disciplinary considerations which requires the application of the standard for disciplinary dismissals. As the review of Plaintiff's academic record below indicates, the infusion of this information into the Committee's deliberations, as alleged by Plaintiff, was not significant enough to require procedures consistent with a disciplinary proceeding. The Plaintiff's unimpressive record appears to be the determinative reason for his dismissal. Furthermore, Plaintiff alleges no basis for the conclusion that the Committee, without knowledge of Honor Code proceedings, would have decided otherwise after reviewing his record. Thus the Court determines what process Plaintiff is due in an *academic* dismissal.

■ At the outset, the Court notes that Plaintiff's complaint that he "was interrupted and prevented from continuing when he attempted to cite favorable information in the evaluations of his clinical performance," (1st Am.Compl. ¶ 60), can not serve as a basis for relief. The Court does not find that in the case of an academic dismissal such as the one in the instant case that a hearing is required by the Due Process Clause. Thus, the interruptions by the Committee or the Committee's refusal to allow Plaintiff to cite information which they already had in front of them in the written evaluations do not, as alleged, entitle Plaintiff to relief. Plaintiff does not allege that the Committee did not have complete evaluations before it which would have contained some positive assessments of his performance. Similarly, Plaintiff's complaint that his attorney could not attend the session, (1st Am.Compl. ¶ 56), is of no legal consequence. Plaintiff was not entitled to a hearing; therefore a hearing without the aid of legal counsel is not actionable. *See Horowitz*, 435 U.S. at 86 n. 3, 98 S.Ct. at 953 n. 3; *cf. Schuler v. Univ. of Minn.*, 788 F.2d 510, 514 (8th Cir.1986), *cert. denied*, 479 U.S. 1056, 107 S.Ct. 932, 93 L.Ed.2d 983 (1987) ("if due process did not require the University to provide Schuler with a hearing prior to her academic dismissal, it would be anomalous to hold that due process requires the University to preserve a record of oral examinations for review").

■ The Court finds that as alleged in his complaint, Plaintiff was afforded several procedural safeguards. The Committee met on March 24, 1993 to determine Plaintiff's future at the Medical College. A series of events evidently prompted the Committee to review Plaintiff's academic record. The Committee considered the mixed reviews of Plaintiff's clinical performance. In his first clinical rotation, Plaintiff received a grade of high pass. (1st Am.Compl. ¶ 36.) In another rotation, "Plaintiff's clinical experience was deemed satisfactory." (1st Am.Compl. ¶ 40.) Plaintiff failed the final written examination for this rotation, however. (1st Am.Compl. ¶¶ 41–43.) The Court notes that Plaintiff alleges that he wanted to appeal this grade but school officials would not allow him. (1st Am.Compl. ¶ 46.) The Committee also considered the negative evaluations. One evaluation noted that Plaintiff's skills and knowledge were "deficient or 'barely adequate'" and "[t]he clerkship coordinator noted that his clinical evaluation was 'below a passing

level.'" (1st Am.Compl. ¶ 39.) Plaintiff withdrew from one of his clerkships, and the Committee was made aware of his poor performance up to the point of his withdrawal. (1st Am.Compl. ¶ 53.) The Committee also considered an evaluation from a rotation in which Plaintiff had been working for only three weeks prior to the meeting. The clerkship coordinator for this rotation criticized Plaintiff for his absences, "marginal participation in sessions, and a weak knowledge base." (1st Am.Compl. ¶ 54.) The Committee also learned of Plaintiff's difficulty in completing his requirement in Pharmacology. Plaintiff, after completing a course in Pharmacology at another institution, took a required examination in Pharmacology at the Medical College. (1st Am.Compl. ¶¶ 14–16.) The examination was necessary because the Medical College would not accept the grade from the other institution as fulfillment of its requirements. (1st Am.Compl. ¶ 15.) Defendant William J. Cooke, Chairman of the Pharmacology Department, informed Plaintiff that he had failed the examination. (1st Am.Compl. ¶ 16.) The following semester Plaintiff took the Pharmacology course at the Medical College and received a grade of high pass. (1st Am.Compl. ¶ 34.)

Presumably, these evaluations and grades led the Committee to conclude that Plaintiff should not be allowed to continue at the Medical College. In the Committee's opinion, Plaintiff "had not demonstrated 'an acceptable level of academic and clinical achievement, as well as a style and standard for professional judgment and behavior that is consistent with the responsibilities of the medical profession.'" (1st Am.Compl. ¶ 65.) Plaintiff appealed the Committee's decision to the Chairman of the Graduate Medical Education Committee, Defendant James F. Lind. Defendant Lind affirmed the decision of the Committee. (1st Am.Compl. ¶ 66.) Plaintiff complains that before rendering his decision, Defendant Lind did not meet with Plaintiff or review with him the pertinent material. (1st Am.Compl. ¶ 67.) Plaintiff does not allege, however, that Defendant Lind did not review Plaintiff's record or the record of the Committee's meeting. Plaintiff then appealed the affirmance to Defendant James E. Etheridge, Jr., Provost and Dean of the Medical College. Defendant Etheridge also upheld the Committee's determination, without any further proceedings. (1st Am.Compl. ¶ 68.)

The facts of *Horowitz* are strikingly similar to those in the instant case. In that case, a medical student sued the school for dismissing her during her final year of study. Several faculty members expressed dissatisfaction in her performance during her clinical rotations. Also, they noted that her attendance was erratic at clinical sessions "and that she lacked a critical concern for personal hygiene." *Horowitz*, 435 U.S. at 81, 98 S.Ct. at 950. Upon the recommendation of the school's Council on Evaluation, the school placed the student on probation that year. The following year, with continued dissatisfaction with her clinical performance, the Council recommended that the student not be considered for graduation in June of that year and that if she did not radically improve, she should be dismissed from the school. *Id.* As a quasi-appeal of the Council's recommendation, the school allowed the student to take a set of oral and practical examinations and to spend time with seven practicing physicians. Upon receipt of the physicians' recommendations, the Council affirmed its prior decision. The Council met again to consider the student's status and upon receipt of a negative evaluation in one of latest clinical rotations, the Council recommended that she not be allowed to re-enroll. *Id.* at 81–82, 98 S.Ct. at 950–51. The Council, however, withheld the recommendation until it received reports from her other rotations. After receiving another negative evaluation, the Council recommended that the school dismiss the student. Another committee in the school and the dean approved the recommendation. The student appealed in writing to the university's provost for health sciences. The provost affirmed the school actions after reviewing the record which the school had compiled in the proceedings. *Id.* at 82, 98 S.Ct. at 951. In reviewing this procedural background, the U.S. Supreme Court found that the university had awarded the student "at least as much due process as the Fourteenth Amendment requires." *Id.* at 84–85, 98 S.Ct. at 952–53.

"The essence of due process is the requirement that 'a person in jeopardy of serious loss [be given] notice of the case against him and an opportunity to meet it.'" *Mathews v. Eldridge,* 424 U.S. 319, 348, 96 S.Ct. 893, 909, 47 L.Ed.2d 18 (1976) (quoting *Joint Anti–Fascist Refugee Comm'n v. McGrath,* 341 U.S. 123, 171–72, 71 S.Ct. 624, 648–49, 95 L.Ed. 817 (1951)). "Dismissal of student for academic reasons comports with the requirement of procedural due process if the student had prior notice of faculty dissatisfaction with his or her performance and of the possibility of dismissal, and if the decision to dismiss the student was careful and deliberate." *Schuler v. Univ. of Minn.,* 788 F.2d 510, 514 (8th Cir.1986), *cert. denied,* 479 U.S. 1056, 107 S.Ct. 932, 93 L.Ed.2d 983 (1987) (citing *Horowitz,* 435 U.S. at 85, 98 S.Ct. at 952). Here, Plaintiff was aware of the contents of his uneven academic record and the reason for the review of it by the Committee. The Committee gave him an opportunity to address it, although this opportunity was not without limits. According to the First Amended Complaint, two different officials, at the request of Plaintiff, reviewed the Committee's recommendation. Nothing among Plaintiff's allegations suggests that the review of Plaintiff's academic record by the Committee and the two officials was anything but careful and deliberate. The procedures mandated by the Due Process Clause vary with circumstances, and the Court finds that the process by which the Committee recommended Plaintiff's dismissal and the Medical College's acceptance of that recommendation, afforded Plaintiff as much process as he was due. *Cf. Hankins v. Temple Univ.,* 829 F.2d 437, 445 (3d Cir.1987) (finding comportment with requirements of due process when student met with faculty members on various occasions to discussion performance and received two written evaluations). Accordingly, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's claim of violation of his procedural due process rights.

## 2. Substantive Due Process

Having determined that the decision to dismiss Plaintiff was based on an academic decision, the Court "may not override [the decision] ... unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Regents of the Univ. of Mich. v. Ewing,* 474 U.S. 214, 225, 106 S.Ct. 507, 513, 88 L.Ed.2d 523 (1985). Plaintiff asserts in the Memorandum in Opposition that the First Amended Complaint makes allegations which support a finding that the Committee did not "exercise professional judgment," but rather acted in bad faith. Plaintiff seizes upon the following language in *Ewing,* which the U.S. Supreme Court took from the trial court's opinion:

> The trial record, ... [the district court] emphasized, was devoid of any indication that the University's decision was "based on bad faith, ill will or other impermissible ulterior motives"; to the contrary, the "evidence demonstrate[d] that the decision to dismiss plaintiff was reached in a fair and impartial manner, and only after careful and deliberate consideration."

*Ewing,* 474 U.S. at 220, 106 S.Ct. at 510 (citing *Ewing v. Board of Regents,* 559 F.Supp. 791, 798–99 (E.D.Mich.1983)). The question for the Court is thus whether the Committee based its recommendation upon an evaluation of Plaintiff's academic career or made the recommendation for some "nonacademic or constitutionally impermissible reason." *Ewing,* 474 U.S. at 225, 106 S.Ct. at 513.

Plaintiff alleges that "[t]he Committee proceedings were directed and influenced by [Defendant Robert A.] McCombs[, an administrator] and others who had determined that plaintiff should be terminated as a student before the meeting was held." (1st Am. Compl. ¶ 59.) Plaintiff also alleges that "as a direct and proximate result of the presentation of erroneous and misleading information and the above-described actions of the defendants to prevent plaintiff from correcting erroneous scores and evaluations, the Committee recommended plaintiff's dismissal from EVMS [the Medical College]." (1st Am.Compl. ¶ 64.) Plaintiff alleges several Defendants prevented him from challenging his grades for the Pharmacology examination and two clinical rotations. For example, Plaintiff wanted to challenge his grade on the

Pharmacology examination, but several Defendants refused him access to the examination. (1st Am.Compl. ¶¶ 16–19.) Defendants did not allow Plaintiff to review the examination until the Department of Education advised them of Plaintiff's right to review the examination. (1st Am.Compl. ¶¶ 25–26.) When Plaintiff reviewed the examination, Defendant Cooke refused to allow him to photocopy it and said that he was going to destroy it. (1st Am.Compl. ¶ 26.) Plaintiff also alleges that Defendant McCombs prevented him from obtaining information about his failed examination in internal medicine to determine if he had corrected all of the errors he made allegedly in transposing his answers from the test booklet to the answer sheet. (1st Am.Compl. ¶¶ 48–49.) It appears to the Court that Plaintiff has had some difficulty with several faculty members over a period of time. From these difficulties, Plaintiff apparently wishes the Court to conclude that the decision to dismiss him was based on ill will or bad faith.

Based upon Plaintiff's academic record as discussed above in the Court's discussion of Plaintiff's claim regarding procedural due process, the Court does not conclude that the decision to dismiss Plaintiff was a substantial departure from academic norms, demonstrating that the Committee did not exercise professional judgment. Plaintiff participated in five clinical rotations, although he did not complete all of them for various reasons. Of the evaluations before the Committee for these five rotations, three of them negatively evaluated Plaintiff's clinical performance. Plaintiff does not provide the Court with information regarding his grades in other subjects or rotations to suggest that these evaluations were not sufficient to justify the Committee's decision nor does he present an otherwise good record which would make the decision outside the bounds of customary academic discretion. Plaintiff argues that the Committee should not have considered two of the negative evaluations, one from the rotation from which he withdrew and one based upon only three weeks in a rotation. Even without these evaluations, Plaintiff's record is not stellar. Assuming the allegations of the complaint to be true, Plaintiff's transcript for his third year of medical school presumably would contain the following information:

1) Psychiatry—High Pass,
2) Family Medicine—Below Passing Level (a failing grade),
3) Internal Medicine: Clinical Experience—Satisfactory, Written Exam—Failure, and
4) Ob/Gyn—Withdrawal.

Although Plaintiff's record may not be as bleak as those of students in previous cases challenging academic dismissals, *e.g., Hubbard v. John Tyler Comm. College*, 455 F.Supp. 753 (E.D.Va.1978) (finding failure of nursing student to satisfy requirements in two courses after two attempts sufficient to deny right to graduate), his record is not one which suggests to the Court that the Committee's decision was the product of "an extensive and calculated campaign to deprive Lewin of anything but an illusion of fairness." (Pl.'s Mem. at 14.)

The Medical College could have placed Plaintiff on probation or allowed him to take remedial classes before dismissing him, but the decision "rested on academic judgment that is not beyond the pale of reasoned decision-making when viewed against the background of his entire career" at the Medical College. *Ewing*, 474 U.S. at 227–28, 106 S.Ct. at 514–15 (finding that decision of university not to allow student to retake exam was not actionable because not "beyond the pale"). Plaintiff could also argue that the decision was a close call; however, such a call rests firmly within the professional judgment of the Committee. *Cf. Horowitz*, 435 U.S. at 89–90, 98 S.Ct. at 954–55 ("The decision to dismiss respondent ... rested on the academic judgement of school officials that she did not have the necessary clinical ability to perform adequately as a medical doctor and was making insufficient progress toward that goal."). The Court does not find that Plaintiff would be entitled to relief under any state of facts which could be proven in support of his claim. The First Amended Complaint provides an ample basis for the Court to conclude that the Committee's decision was the result of deliberation, on at least three occasions, and was not a substantial departure from academic norms. Thus the

Court **GRANTS** Defendants' motion to dismiss Plaintiff's claim of a deprivation of his right to substantive due process.

### C. Claim Arising Under the Family Educational Rights and Privacy Act

██ Plaintiff's fourth cause of action arises under 42 U.S.C.A. § 1983 (West 1994), premised upon an alleged violation of the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C.A. § 1232g(a)(2) (West Supp.1994), and 34 C.F.R. § 99.22 (1994).[1] FERPA provides in relevant part:

No funds shall be made available under any applicable program to any educational agency or institution unless ... [students who have attained eighteen years of age or are attending an institution of postsecondary education] who are or have been in attendance at a school of such agency or institution, are provided an opportunity for a hearing by such agency or institution, *in accordance with regulations of the Secretary,* to challenge the content of such student's education records, in order *to insure that the records are not inaccurate, misleading,* or otherwise in violation of the privacy rights of students, and to provide an opportunity for the correction or deletion of any such inaccurate, misleading or otherwise inappropriate data contained therein and to insert into such records a written explanation of the [student] ... respecting the content of such record.

20 U.S.C. § 1232g(a)(2) (incorporating language of § 1232g(d)) (emphasis added). The implementing regulation, 34 C.F.R. § 99.22 (1994), sets forth the minimum requirements for the conduct of a hearing to challenge the content of a student's educational records. The First Amended Complaint describes several acts which allegedly constitute a violation of FERPA and its implementing regulations including the following:

1. denying Plaintiff the right to the assistance of counsel at the Committee's meeting,

2. refusing to provide Plaintiff "a meaningful opportunity" to contest his grades on the Pharmacology examination and two clinical rotations,

3. scheduling the Committee to preempt Plaintiff's right to appeal his grades for the clinical rotations,

4. "resolving" Plaintiff's grade appeals before he filed them,

5. using information obtained in connection with the Honor Code proceeding, and

6. the acts discussed above regarding the alleged violation of Plaintiff's right to due process.

(1st Am.Compl. ¶ 81.)

Defendants answer these allegations with two substantive responses. First, Defendants argue that Plaintiff is attempting to challenge "the grade assigned to him as a *substantive matter.*" (Defs'. Mem. at 26 (emphasis added).) Such a challenge, Defendants argue, is beyond the scope of FERPA. (*Id.*) Defendants cite *Tarka v. Cunningham,* 917 F.2d 890 (5th Cir.1990) in support of their position that FERPA only provides the means to challenge ministerial errors or those grades which do not reflect what the grader intended or are mathematically incorrect. (Defs'. Mem. at 26–27); *Tarka,* 917 F.2d at 891. Defendants subsequently argue that because the Committee addressed the *substance* of Plaintiff's grade on the Pharmacology examination, its meeting was not a hearing under FERPA. (Defs'. Mem. at 27.) In determining whether the Medical College conducted a hearing under FERPA, the Court notes that Defendants, in resisting Plaintiff's claims regarding due process, state that Plaintiff received "an SPC hearing and two layers of appellate review." (Defs'. Mem. at 21.) Furthermore, Defendants do not deny Plaintiff's allegation that Defendant Etheridge, Provost and Dean of the Medical College, denied Plaintiff's December 17, 1991 request for a formal hearing and stated after that meeting with Plaintiff that the meeting constituted Plaintiff's "formal hearing." (1st

---

1. Although courts have held that there exists no private right of action under FERPA, several have held that an action under 42 U.S.C.A. § 1983 (West 1994) may be premised upon an alleged violation of rights under FERPA. *E.g., Tarka v. Cunningham,* 917 F.2d 890, 891 (5th Cir.1990); *Fay v. South Colonie Cent. Sch. Dist.,* 802 F.2d 21, 33 (2d Cir.1986).

Am.Compl. ¶ 31; Defs'. Mem. at 28.) Thus construing the allegations of the First Amended Complaint in a light most favorable to Plaintiff and following Defendants' line of reasoning, the Court may draw one of two conclusions: 1) the meeting of the Student Progress Committee was not a hearing under FERPA and thus Plaintiff may not have received the hearing to which he is entitled under FERPA, or 2) the meeting of the Committee or one of the meetings with Defendant Etheridge was a hearing under FERPA, and Defendants may have failed to comply with FERPA's implementing regulations which establish the minimum requirements for the conduct of a hearing. The requirements in contention would include conduct of the hearing by a disinterested individual, allowance of the assistance of counsel, and the use solely of evidence presented at the hearing. *See* 34 C.F.R. §§ 99.22(c), (d), (f) (1994).

Defendants then raise another argument if the Court finds that the Committee's meeting was a hearing under FERPA. Most of the claim arising under FERPA stems from Plaintiff's reliance upon the implementing regulations of FERPA. Defendants' second substantive contention arises from Plaintiff's allegation that the denial of assistance of counsel at the Committee's meeting violated Plaintiff's rights under FERPA, its implementing regulation, 34 C.F.R. § 99.22 (1994), and 42 U.S.C.A. § 1983 (West 1994). Defendants argue that this regulation does not create an enforceable interest under § 1983. (Defs'. Mem. at 27–28.) Defendants also reassert that the inability to challenge the score of which Plaintiff complains is a substantive rather than ministerial matter, and thus is not within the purview of the statute. (Defs'. Mem. at 28–29.)

Plaintiff responds to the motion to dismiss by arguing that Defendants have characterized incorrectly the nature of Plaintiff's challenge. (Pl.'s Mem. at 29–30.) The First Amended Complaint alleges that Defendants did not allow Plaintiff "to contest the score on his Pharmacology examination and establish that the score was actually erroneous and to contest his grades in Family Medicine and Internal Medicine Clerkships...." (1st

Am.Compl. ¶ 81.) Regarding the grade on the Pharmacology examination, the First Amended Complaint alleges that the officials and employees of the Medical College had reason to know that there may have existed various scoring inaccuracies. (1st Am. Compl. ¶ 23.) The language employed by Plaintiff in the complaint does not necessarily imply that his challenge stands outside the scope of FERPA. Rather, the complaint alleges that for at least one of the questions on the examination which Plaintiff correctly answered, the answer was mistakenly scored as an incorrect response. (1st Am.Compl. ¶ 29.) Reference to this alleged scoring error suggests that Plaintiff's challenge falls squarely within the bounds of FERPA. *Cf. Tarka*, 917 F.2d at 891–92 (finding that because student alleged no ministerial or mathematical error in his grade, FERPA did not allow challenge).

Assuming the allegations to be true, the Court does not find with a certainty that Plaintiff would not be entitled to relief under any state of facts which he could prove in support of his claim. Thus, the Court **DENIES** Defendants' motion to dismiss the claim arising under FERPA.

### D. *Claim Arising Under Section 504 of the Rehabilitation Act of 1973*

■ The fifth cause of action alleges that Plaintiff's dismissal from the Medical College violated § 504 of the Rehabilitation Act of 1973, 29 U.S.C.A. § 794 (West Supp.1994). Section 504 in relevant part provides:

No otherwise qualified individual with a disability in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

29 U.S.C.A. § 794 (West Supp.1995). More specifically, Plaintiff alleges that Defendants discriminated against him when they dismissed him and refused to readmit him,

based upon their perception that he had a disability, i.e., a mental disability resulting in a flat affect, withdrawal, reticence, and the inability to interact on a personal level

with others, when he was otherwise qualified to continue his medical education, without attempting to make a reasonable accommodation for that perceived disability. . . .

(1st Am.Compl. ¶ 82.) This characterization of Plaintiff as having a flat affect and deficient interpersonal skills comes from the evaluation of Plaintiff at the conclusion of his clinical rotation in family medicine. (1st Am. Compl. ¶ 37–39.) Defendants answer this allegation by arguing that Plaintiff has not alleged the prima facie elements of a claim under § 504 because, *inter alia*, Plaintiff does not allege that his dismissal was based *solely* upon the perceived disability.

■ To establish the prima facie elements of a claim arising under § 504 of the Rehabilitation Act of 1973, Plaintiff must show that

(1) he is an individual with a disability as defined by the Act,

(2) he is otherwise qualified,

(3) he is being excluded from the participation in, being denied the benefits of, or being subjected to discrimination under the program solely by reason of his disability, and

(4) the relevant program or activity receives federal financial assistance.

*Torcasio v. Murray,* 862 F.Supp. 1482, 1490 (E.D.Va.1994), *aff'd in relevant part,* 57 F.3d 1340 (4th Cir.1995); *petition for cert. filed,* 64 U.S.L.W. 3272 (U.S. Sept. 27, 1995) (No. 95–535). Plaintiff argues in his Memorandum in Opposition that Defendants give "the word 'solely' a meaning it does not deserve, even if ... [the Medical College's] other reason(s) for the termination were not themselves illegitimate." (Pl.'s Mem. at 37.) Despite Plaintiff's contention that Defendants have placed too great an emphasis upon the existence of reasons other than Plaintiff's perceived disability, several courts have similarly found that to establish a prima facie case of a violation of § 504, the plaintiff must show that the disability was the sole reason for the unfavorable or discriminatory treatment. *Norcross v. Sneed,* 755 F.2d 113, 117 n. 5 (8th Cir.1985); *Buko v. American Medical Lab., Inc.,* 830 F.Supp. 899, 905 (E.D.Va. 1993), *aff'd,* 28 F.3d 1208 (4th Cir.1994);

*Assa'Ad–Faltas v. Virginia,* 738 F.Supp. 982, 987 (E.D.Va.1989), *aff'd,* 902 F.2d 1564 (4th Cir.1990). Plaintiff further responds by arguing that barring recovery because the disability was not the sole reason for the termination would be inconsistent with Title VII jurisprudence and potentially would lead to a ludicrous result. (Pl.'s Mem. at 35–38.) The United States Court of Appeals for the Eighth Circuit addressed this alleged inconsistency, however, and resolved it by finding that the statutes do require different showings of the plaintiff. In *Norcross v. Sneed,* the Eighth Circuit noted the following:

> In this context, it is significant that the section 504 plaintiff must show that handicap was the *sole* reason for the decision, while the Title VII plaintiff pursuing a disparate treatment claim need only show that a protected classification was *a factor* influencing the decision.

755 F.2d at 117 n. 5 (8th Cir.1985) (citations omitted).

In the First Amended Complaint Plaintiff alleges that the Medical College dismissed Plaintiff "ostensibly based on its opinion that plaintiff had not demonstrated 'an acceptable level of academic and clinical achievement, as well as a style and standard for professional judgment and behavior that is consistent with the responsibilities of the medical profession.'" (1st Am.Compl. ¶ 66.) The evaluation of Plaintiff which most directly questions his mental health also notes that "his knowledge and skills were ... 'barely adequate.'" (1st Am.Compl. ¶ 39.) In another clinical evaluation, the faculty member recorded that Plaintiff "demonstrated a 'serious lack of insight and judgement into his role and expected level of function as a third year medical student'" and also commented upon his lack of knowledge. (1st Am.Compl. ¶ 53.) Yet another evaluation found Plaintiff deficient in his marginal participation in clinical sessions, his absences, and his weak knowledge base. (1st Am.Compl. ¶ 54). Although more than one clinical faculty member noted a possible mental health problem for Plaintiff, by Plaintiff's own pleadings, (1st Am.Compl. ¶¶ 39, 53), more than one clinician also negatively evaluated Plaintiff in various aspects of his base of knowledge and clinical

participation. (1st Am.Compl. ¶¶ 39, 53, 54.) Finally, Plaintiff alleges that "[t]he decisions to recommend plaintiff's termination and to, in fact, terminate plaintiff, were based, *in part,* on the perception that plaintiff suffered from a psychological or psychiatric disability...." (1st Am.Compl. ¶ 63 (emphasis added).) By Plaintiff's own indirect and direct admissions, Defendants based their decision to dismiss Plaintiff on a number of factors, which may have included a perceived disability. Thus, Plaintiff fails to establish one of the prima facie elements of a claim under § 504 of the Rehabilitation Act, namely that Defendants excluded Plaintiff, denied Plaintiff the benefits of a medical education, or discriminated against Plaintiff *solely* on the basis of his disability, perceived or real. Accordingly, the Court **GRANTS** Defendants' motion to dismiss regarding Plaintiff's fourth cause of action based upon an alleged violation of § 504 of the Rehabilitation Act of 1973.

### E. *Defamation*

 Plaintiff alleges that Defendants Cooke, Toewe, Etheridge, and McCombs conspired to defame and defamed him by publishing the statement that Plaintiff failed the Pharmacology examination. (1st Am. Compl. ¶ 83.) Defendants respond to this claim by arguing that the statute of limitations has expired for this claim of defamation which accrued on March 24, 1993 or April 15, 1993. (Defs'. Mem. at 47–48.) The statute of limitations under the law of the Commonwealth of Virginia for defamation is one year. VA.CODE ANN. § 8.01–248 (Michie 1995); *Semida v. Rice,* 863 F.2d 1156, 1160 (4th Cir.1988) (citing *Morrissey v. William Morrow & Co.,* 739 F.2d 962, 967 (4th Cir.1984), *cert. denied,* 469 U.S. 1216, 105 S.Ct. 1194, 84 L.Ed.2d 340 (1985)). Plaintiff filed a suit for defamation naming Defendants Cooke, Etheridge, and McCombs as defendants in state court on March 24, 1994. Upon motion of Plaintiff, the state court entered a nonsuit order on March 23, 1995 before service of process on the defendants or any responsive pleadings had been filed. Under the Virginia Code, a plaintiff who suffers a voluntary nonsuit may recommence his action within six months from the date of the order entered by the court. VA.CODE ANN. § 8.01–229(E)(3) (Michie 1995). Thus at the earliest, the statute of limitations would have run on September 23, 1995. Plaintiff commenced this action on March 24, 1995. Thus the statute of limitations does not bar the claim of defamation. Accordingly, the Court **DENIES** Defendants' motion to dismiss the claim of defamation.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's second, third, and fifth causes of action regarding an alleged deprivation of his substantive and procedural due process rights and an alleged violation of the Rehabilitation Act of 1973, respectively and **DENIES** Defendants' motion to dismiss Plaintiff's first, fourth, and sixth causes of action regarding an alleged breach of contract, an alleged violation of the Family Educational Rights and Privacy Act, and alleged defamation, respectively.

The Clerk is **DIRECTED** to send a copy of this order to counsel for the parties.

It is so **ORDERED.**